UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

NORTHWEST ECOSYSTEM ALLIANCE, et al.,

          Plaintiffs,

  v.

MARK E. REY, et al.,

          Defendants.

No. 04-844P

ORDER ON PLAINTIFFS' MOTION FOR INJUNCTIVE RELIEF

     This matter comes before the Court on Plaintiffs' motion for injunctive relief. (Dkt. No. 76). Having reviewed the papers and pleadings submitted by the parties and having heard oral argument on this matter, the Court GRANTS in part and DENIES in part Plaintiff's motion. The Court ORDERS as follows:

     (1)    The Record of Decision dated March 22, 2004, entitled "To Remove or Modify the Survey and Manage Mitigation Measure Standards and Guidelines in Forest Service and Bureau of Land Management Planning Documents Within the Range of the Northern Spotted Owl" (the "2004 ROD") is hereby set aside, and Defendants shall not rely on it or implement it.

ORDER - 1

(2) The Record of Decision dated January 2001, entitled "Record of Decision and Standards and Guidelines for Amendments to the Survey and Manage, Protection Buffer, and other Mitigation Measure Standards and Guidelines" (the "2001 ROD") is hereby reinstated, including any amendments or modifications to the 2001 ROD that were in effect as of March 21, 2004.

(3) Defendants shall not authorize, allow, or permit to continue any logging or other ground-disturbing activities on projects to which the 2001 ROD applied unless such activities are in compliance with the provisions of the 2001 ROD (as the 2001 ROD was amended or modified as of March 21, 2004).

(4) No project or activity enjoined under this Order may occur unless and until this Court modifies or vacates this Order.

**Background**

The Court previously set forth the background for this case in its August 1, 2005 order on the parties' cross-motions for summary judgment. See Northwest Ecosystem Alliance v. Rey, 380 F. Supp. 2d 1175 (W.D.Wash. 2005). For ease of reference, the Court restates the key facts discussed in the previous order.

Plaintiffs are a coalition of environmental and conservation groups. Plaintiffs challenge actions taken in 2004 by the Departments of Agriculture and Interior ("the Agencies") to eliminate a set of standards and guidelines called the "Survey and Manage standard" from the Northwest Forest Plan. The Survey and Manage standard was used to protect certain rare and uncommon species in forested lands in Washington, Oregon, and California.

The Survey and Manage standard was originally adopted in a Record of Decision (ROD) issued in 1994. This standard consists of four mitigation measures: (1) managing known sites of certain species; (2) conducting surveys prior to ground-disturbing activities; (3) conducting extensive

ORDER - 2

surveys to find high priority sites for hard-to-find species; and (4) conducting general regional surveys to gain information about poorly known species.

In 2000, the Agencies prepared a supplemental environmental impact statement (SEIS) to evaluate the Survey and Manage standard. In January 2001, the Agencies issued a Record of Decision (the "2001 ROD") that amended certain provisions of the Survey and Manage standard to streamline its implementation.

Timber industry groups, as well as environmental groups, filed lawsuits challenging the 2001 ROD. The cases were consolidated before an Oregon district court. In 2002, the Agencies and the timber industry groups entered into a settlement agreement that required the Agencies to examine, in an SEIS, the possibility of eliminating the Survey and Manage standard and relying instead on specific programs run by the Bureau of Land Management (BLM) and U.S. Forest Service to protect certain species. The environmental groups dismissed their lawsuit pending the new SEIS.

The agencies prepared an SEIS in January 2004 (the "2004 SEIS") that examined three alternatives regarding the Survey and Manage standard. These alternatives were: (1) retaining the Survey and Manage standard; (2) eliminating it; and (3) retaining but modifying it in certain ways. The SEIS identified the second alternative – eliminating the Survey and Manage standard – as the preferred alternative. On March 22, 2004, the Agencies issued a Record of Decision to Remove or Modify the Survey and Manage Mitigation Measure Standards and Guidelines (the "2004 ROD"), which adopted the 2004 SEIS's preferred alternative of eliminating the Survey and Manage standard.

Plaintiffs filed this lawsuit in April 2004, naming various federal officials and agencies as defendants. On August 1, 2005, the Court granted in part and denied in part Plaintiff's motion for summary judgment and denied Defendants' motion for summary judgment. The Court found that the Defendants failed to comply with the National Environmental Policy Act (NEPA) in several respects in preparing the 2004 SEIS. Specifically, the Court found:

ORDER - 3

    \*      Defendants failed to analyze potential impacts to Survey and Manage species if they are not added to or are removed from the Forest Service's and BLM's programs for special status species ("SSS programs").

    \*      Defendants failed to provide a thorough analysis of their assumption that late-successional reserves would adequately protect species that the Survey and Manage standard was introduced to protect, particularly in light of their previous positions in earlier environmental impact statements.

    \*      Defendants' determination that the Survey and Manage standard was a hindrance to hazardous fuel treatments was flawed in several ways.

The Court reserved ruling on an appropriate remedy, pending additional briefing by the parties. For the remedial phase of this litigation, the American Forest Resource Council and the Douglas Timber Operators have been granted leave to appear as Defendant-Intervenors.

In their briefing in the remedial phase of this litigation, Plaintiffs request an order to:

(1)    Set aside the 2004 ROD;

(2)    Reinstate the 2001 ROD;

(3)    Enjoin the Agencies and Defendants-Intervenors from authorizing, allowing, permitting to continue, or performing any logging or other ground-disturbing activities on projects to which the 2001 ROD applied until it is fully complied with;

(4)    Require the Agencies to publicly consider and disclose in a NEPA analysis their implementation of the Survey and Manage standard and make a new decision based on this analysis before offering timber sales or other ground-disturbing activities implicated by the reinstated 2001 ROD.

The federal Defendants and the Defendant-Intervenors oppose Plaintiffs' request. The federal Defendants propose to supplement the 2004 SEIS to address the deficiencies identified by the Court, followed by issuance of a new ROD. Defendants initially stated that they expected to be able to issue a new ROD by September 30, 2006. However, in a filing on December 13, 2005, Defendants indicated that they now expect to be able to issue a new ROD on or before March 30, 2007.

The Defendant-Intervenors argue that the proper remedy would be to remand the case to the Agencies for further action consistent with the Court's earlier order. The Defendant-Intervenors also

ORDER - 4

argue that the Agencies should be required to complete a supplemental environmental analysis no later than April 1, 2006.

**Analysis**

A.Standards for Injunctive Relief

Traditionally, "the bases for injunctive relief are irreparable injury and inadequacy of legal remedies." Amoco Prod. Co. v. Village of Gambell, 480 U.S. 531, 542 (1987). Plaintiffs note that the Ninth Circuit has held that "absent 'unusual circumstances,' an injunction is the appropriate remedy for a violation of NEPA's procedural requirements." Thomas v. Peterson, 753 F.2d 754, 764 (9th Cir. 1985). Although irreparable harm is not presumed when an agency fails to comply with NEPA, courts have repeatedly recognized that "[e]nvironmental injury, by its nature, can seldom be adequately remedied by money damages and is often permanent or at least of long duration, i.e. irreparable." Amoco, 480 U.S. at 542.

The Ninth Circuit has noted:

> In the NEPA context, irreparable injury flows from the failure to evaluate the environmental impact of a major federal action. While an injunction does not automatically issue upon a finding that an agency violated NEPA, "the presence of strong NEPA claims gives rise to more liberal standards for granting an injunction." If environmental injury is sufficiently likely, the balance of harms will usually favor the issuance of an injunction to protect the environment.

High Sierra Hikers Ass'n v. Blackwell, 390 F.3d 630, 642 (9th Cir. 2004) (internal citations omitted); see also Idaho Sporting Congress Inc. v. Alexander, 222 F.3d 562, 569 (9th Cir. 2000) (balance of harms usually favors issuance of injunction when environmental injury is "sufficiently likely"); Sierra Club v. United States Forest Service, 843 F.2d 1190, 1195 (9th Cir. 1988) (same).

Citing cases that did not involve NEPA violations, Defendants argue that Plaintiffs have the burden to prove a "substantial and immediate irreparable injury" in order to obtain injunctive relief. However, as noted above, the Ninth Circuit has held that a more liberal standard for granting injunctive relief applies when a party has a strong NEPA claim. See High Sierra Hikers, 390 F.3d at 642. Under Ninth Circuit authority involving NEPA cases, injunctive relief is normally warranted if

ORDER - 5

1  environmental injury is "sufficiently likely," unless circumstances tip the balance of harms in favor of
2  other interests.

3        1.      <u>Likelihood of Environmental Injury</u>

4        Plaintiffs argue that environmental injury is likely to occur if injunctive relief is not granted.
5  They note that the Survey and Manage standard was designed to protect rare and uncommon species.
6  Before the 2004 ROD was adopted, the Survey and Manage standard protected 296 species and 4
7  arthropod functional groups. Plaintiffs argue that harm to and the prospective loss of these species
8  will cause irreparable harm to the ecosystem because the species protected by the Survey and Manage
9  standard provide crucial and essential biological functions that support the ecosystem. Plaintiffs point
10 to a decision by Judge Dwyer of this Court which noted that "surveys are designed to identify and
11 locate species; if they are not done before logging starts, plants and animals . . . will face a potentially
12 fatal loss of protection." <u>Oregon Natural Res. Council v. United States Forest Serv.</u>, 59 F. Supp. 2d
13 1085, 1093 (W.D. Wash. 1999).

14       The Agencies maintain that they will be able to address the deficiencies in the 2004 SEIS and
15 issue a new Record of Decision by March 30, 2007. The Agencies state that while they work to
16 address these deficiencies, they will protect 152 of the species that were protected under the Survey
17 and Manage standard under the Agencies' Special Status Species (SSS) programs. Defendants also
18 indicate that they will continue to protect known sites of 57 other species.

19       However, Plaintiffs argue that the Agencies' SSS programs do not offer the same level of
20 protection as the Survey and Manage standard – a point that the Government does not dispute. For
21 instance, Plaintiffs argue that the SSS programs generally do not require pre-disturbance surveys that
22 the Survey and Manage standard required for some species. In addition, Plaintiffs assert that "even if
23 a particular species is covered by any particular SSS program, agency personnel nonetheless retain
24 complete discretion whether to provide any site-specific protection to known sites of the species."
25 (Dkt. No. 89 at 5).

ORDER - 6

Plaintiffs also note that about half of the timber sales that rely upon the 2004 ROD include logging mature or old growth forests. Plaintiffs argue that the loss of these forests would constitute irreparable harm. See, e.g., Neighbors of Cuddy Mountain v. United States. Forest Serv., 137 F.3d 1372, 1382 (9th Cir. 1998) (noting that "the old-growth forests plaintiffs seek to protect would, if cut, take hundreds of years to reproduce"); Portland Audubon Soc'y v. Lujan, 795 F. Supp. 1489, 1509 (D. Or. 1992) ("Courts in this circuit have recognized that timber cutting causes irreparable damage and have enjoined cutting when it occurs without proper observance of NEPA procedures and other environmental laws").

Defendants argue that the loss of old-growth forests is not relevant because Plaintiffs have not challenged any decision to harvest old growth timber in this case; instead, they have challenged the elimination of the Survey and Manage standard in the 2004 ROD. Defendants argue that "in order to meet the standard for a permanent injunction in this case, Plaintiffs are required to demonstrate a likelihood of substantial and irreparable harm to the Survey and Manage species," rather than to old-growth forests. (Dkt. No. 83 at 6). However, the species protected by the Survey and Manage standard live primarily in mature and old growth forests. As a result, the loss of such forests may cause irreparable harm to the species.

Plaintiffs also observe that it is difficult to quantify the potential harm to the Survey and Manage species under the 2004 ROD due to the flaws in the Agencies' NEPA analysis. As Plaintiffs note, "where as here an agency violates NEPA . . . the risk of irreparable harm is difficult to precisely assess because the analysis that would quantify that harm is deficient." (Dkt. No. 89 at 3).  See, e.g., Sierra Club v. Hodel, 848 F.2d 1068, 1097 (10th Cir. 1988), overruled on other grounds, Village of Los Ranchos De Albuquerque v. Marsh, 956 F.2d 970 (10th Cir. 1992) (noting "the risk of irreparable harm is impossible to assess, because the studies that would quantify that harm are incomplete."); Greenpeace Foundation v. Mineta, 122 F. Supp. 2d 1123, 1138 (D. Haw. 2000) (similar).

ORDER - 7

The Court finds that Plaintiffs have satisfied their burden of showing that environmental harm is sufficiently likely to occur unless injunctive relief is ordered, both to the Survey and Manage species and the forests in which they may be found.  Therefore, injunctive relief is warranted unless circumstances tip the balance of equities in favor of Defendants.

2.   Inadequate Remedies at Law

The parties devote little briefing to the question of whether injunctive relief is needed because Plaintiffs have inadequate remedies at law.  However, Plaintiffs maintain that injunctive relief is necessary because declaratory relief alone would not be sufficient to protect the Survey and Manage species.  They state that "there is no dispute that at least the BLM has auctioned for award timber sales that were never surveyed or buffered under the 2001 ROD even after this Court ruled on summary judgment that the 2004 SEIS is illegal . . . so there is no question that declaratory judgment alone does not afford an adequate remedy." (Dkt. No. 89 at 3).  The Court agrees that declaratory relief alone would be an insufficient remedy.

B.   Plaintiffs' Proposed Remedies

The Court has broad discretion in fashioning appropriate injunctive relief.  However, the Court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." Amoco Prod. Co. v. Village of Gambell, 480 U.S. 531, 542 (1987).  As Defendants note, injunctive relief must also be narrowly tailored to give only relief to which plaintiffs are entitled. Orantes-Hernandez v. Thornburgh, 919 F.2d 549, 558 (9th Cir. 1990).

1.   Plaintiffs' request to set aside the 2004 ROD and reinstate the 2001 ROD

Plaintiffs argue that the 2004 ROD should be set aside because it was based on an SEIS that did not comply with NEPA.  Plaintiffs note that the Administrative Procedures Act (APA) provides that a court "shall hold unlawful and set aside agency action . . . found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "without observance of procedure

ORDER - 8

required by law." 5 U.S.C. § 706(2)(A) & (D).  The Ninth Circuit has also observed that "NEPA is a procedural statute, and we have held that 'agency action taken without observance of the procedure required by law will be set aside.'" Idaho Sporting Congress Inc. v. Alexander, 222 F.3d 562, 567 (9th Cir. 2000).

In addition, Plaintiffs argue that the 2001 ROD should be reinstated because it was the Record of Decision that was in place before the 2004 ROD was adopted.  Plaintiffs rely on cases holding that when an agency rule or regulation is invalidated, the proper remedy is to reinstate the previously applicable rule or regulation.  See, e.g, Paulsen v. Daniels, 413 F.3d 999, 1008 (9th Cir. 2005) ("The effect of invalidating an agency rule is to reinstate the rule previously in force.").

Defendants argue that the APA does not require the Court to set aside the 2004 ROD or to reinstate the 2001 ROD.  Defendants cite the Ninth Circuit's decision in National Wildlife Federation v. Espy, 45 F.3d 1337 (9th Cir. 1995), where the court held:

> Although the district court has the power to do so, it is not required to set aside every unlawful agency action.  The court's decision to grant or deny injunctive or declaratory relief under the APA is controlled by principles of equity.  The district court must weigh "the competing claims of injury . . . and the effect on each party or the granting or withholding of the requested relief."

Id. at 1343 (internal citations omitted).

Defendants contend that the balance of equities in this case does not favor setting aside the 2004 ROD and reinstating the 2001 ROD.  They assert that these remedies would prevent the Agencies from offering numerous timber sales with significant financial harm for the Agencies and potentially the regional economy.  Defendants contend that it would cost the Agencies $2.7 million to reinstate the Survey and Manage standard.  They state that the Agencies have already "approved or planned" more than 140 timber projects that rely on the 2004 ROD.  They also maintain that reverting to the 2001 ROD will prevent the Agencies from achieving the Probable Sale Quantity (PSQ) of 805 million board feet of timber that the Northwest Forest Plan sets as a goal to be offered on a sustained

ORDER - 9

basis. In addition, Defendants suggest that the need to rebuild homes following recent hurricanes in the Gulf of Mexico region provides an another reason to leave the 2004 ROD in place.

In response, Plaintiffs note that the Agencies do not cite a single case in which injunctive relief was denied based on the cost to the government. Plaintiffs argue that "the Government's economic loss cannot be considered compelling if it is to be gained in contravention of federal law." Wilderness Soc. v. Tyrrel, 701 F. Supp. 1473, 1491 (E.D. Cal. 1988), aff'd in part, rev'd and remanded in part, 913 F.2d 813 (9th Cir. 1990). Plaintiffs also contend that a significant number of timber sales have been approved that already comply with the 2001 ROD, meaning that the Agencies would still be able to offer a number of sites for logging if the 2001 ROD is reinstated. In addition, Plaintiffs note that the PSQ goals set forth in the Northwest Forest Plan are not mandated by any statute or regulation. Finally, Plaintiffs challenge Defendants' contention that recent hurricanes in the Gulf region have created a shortage of timber nationwide, pointing to an optimistic press release issued by the Southern Forest Products Association the month after Hurricane Katrina.

Defendant-Intervenors generally raise similar arguments as the federal Defendants. In addition, the timber groups suggest that there is no legal basis for the Court to compel the protection of Survey and Manage species. However, Plaintiffs note that Judge Dwyer rejected similar arguments by the timber industry in 1994. Seattle Audubon Soc'y v. Lyons, 871 F. Supp. 1291, 1301 (W.D. Wash. 1994), aff'd, 80 F.3d 1401 (9th Cir. 1996).

On balance, the Court finds that the competing equities and the public interest weigh in favor of setting aside the 2004 ROD and reinstating the 2001 ROD.[1] The Court recognizes that this remedy would impose added costs and burdens on Defendants and Defendant-Intervenors. However, the Court finds that such costs and burdens are outweighed by the potential environmental harm that may

---

[1] At oral argument, counsel for Defendant-Intervenors suggested that if the 2001 ROD is reinstated, the Court should reinstate the 2001 ROD as it existed as of March 21, 2004, the day before the 2004 ROD was issued. The Court agrees. The 2001 ROD is reinstated subject to any amendments or modifications to the 2001 ROD that were in effect as of March 21, 2004.

ORDER - 10

result otherwise. Furthermore, the record before the Court suggests that there are already a significant number of timber sales with available volume that comply with the 2001 ROD. As a result, setting aside the 2004 ROD and reinstating the 2001 ROD should not cause a dire shortfall in timber harvests.

2.  <u>Plaintiffs' request to enjoin projects that do not comply with the 2001 ROD</u>

Plaintiffs also ask the Court enjoin any logging or other ground-disturbing projects that do not comply with the 2001 ROD. Plaintiffs argue that this remedy is necessary to ensure that the Agencies do not permit activities that fail to comply with the Survey and Manage standard set forth in the 2001 ROD.

Defendants argue that this remedy is not properly before the Court because Plaintiffs challenged the 2004 ROD, not any site-specific timber project. They suggest that imposing this remedy would impermissibly expand the scope of this case. They also argue that Plaintiffs have not established standing to challenge any of the individual timber projects that they seek to enjoin.

In response, Plaintiffs maintain that "timber sales approved that specifically rely on the 2004 ROD to avoid surveying for and buffering sites for rare and uncommon species are plainly within the subject of this lawsuit." (Dkt. No. 89 at 16). Plaintiffs also argue that in <u>Lane County Audubon Society v. Jamison</u>, 958 F.2d 290, 294-95 (9th Cir. 1992), the Ninth Circuit rejected arguments that timber sales that failed to comply with strategies to protect the northern spotted owl should be allowed to proceed on the grounds that the plaintiffs had not challenged individual sales.

The Court finds Plaintiffs' arguments more persuasive. Although Plaintiffs did not challenge specific individual timber sales in this action, they brought a broad challenge to the legality of the 2004 ROD. It would be incongruous for the Court to set aside the 2004 ROD and to reinstate the 2001 ROD, while at the same time allowing timber projects that do not comply with the 2001 ROD to proceed. As before, the competing equities and the public interest weigh in favor of Plaintiffs. The environmental harm that may result from projects that do not comply with the 2001 ROD outweighs the costs and burdens on Defendants and Defendant-Intervenors.

ORDER - 11

3.  Plaintiffs' final request for relief

Finally, Plaintiffs ask the Court to "require the Agencies to publicly consider and disclose in a NEPA analysis their implementation of the Survey and Manage standard and make a new decision based on this analysis before offering timber sales or other ground-breaking activities implicated by the reinstated 2001 [ROD]." (Dkt. No. 76 at 1). Plaintiffs explain this request for relief it as follows:

> [I]t is impossible to determine which timber sales the Agencies offered under the 2004 ROD, which should now be void, because they did not respond to [Plaintiffs'] request that they disclose the dates of the NEPA analyses and decision documents to offer sales implicated by the Survey and Manage standard. Either the sales were offered under the 2004 ROD, and those decisions should be void, or they were offered under the 2001 ROD, which means that there must be a NEPA analysis that publicly discloses the existence of Survey and Manage species, the survey protocols applied, and the results of survey, i.e., whether any forests were buffered.

Id. at 10. To support this request, Plaintiffs cite Oregon Natural Resources Council v. United States Forest Service, 293 F. Supp. 2d 1200 (D. Or. 2003), where the court held that the Forest Service violated NEPA for six individual timber sales because the agency did not prepare "NEPA documents disclosing or analyzing its survey and manage duties, the results of surveys, and management decisions based on the results." Id. at 1210.

Defendants characterize this request as "grossly overreaching." (Dkt. No. 83 at 16). Defendants contend that "Plaintiffs are asking the Court to judge the sufficiency of all the NEPA analyses for all of the projects which the Agencies have approved under the 2001 ROD," which Defendants state would implicate the NEPA analyses for projects approving 245 million board feet of timber from the late 1990s to 2000. Id. at 15. (emphasis in original). Defendants also note that the Court does not have before it any of the administrative records for individual timber sales under the 2001 ROD.

The Court finds that Plaintiffs have not demonstrated that this request for relief is warranted. Although Plaintiffs suggested at oral argument that this relief would assist them in tracking Defendants' compliance with the requirements of the 2001 ROD, Plaintiffs also acknowledged that

ORDER - 12

there are other methods for them to track such compliance. On the record before it, the Court does not find that this relief is necessary or appropriate.

**Conclusion**

Plaintiffs prevailed on their claims that Defendants' decision to eliminate the Survey and Manage standard in March 2004 was based on a Supplemental Environmental Impact Statement that did not comply in several respects with the National Environmental Policy Act. As an appropriate remedy, the Court finds that Defendants' 2004 decision to eliminate the Survey and Manage standard should be set aside and the 2001 Record of Decision regarding the Survey and Manage standard should be reinstated. The Court also finds that Defendants should be enjoined from authorizing, allowing, or permitting to continue any logging or other ground-disturbing activities on projects to which the 2001 ROD applied unless those activities comply with the reinstated 2001 ROD. Plaintiffs have demonstrated that environmental harm is sufficiently likely unless injunctive relief is ordered, and the costs and burdens that may be imposed on Defendants and the Defendant-Intervenors do not outweigh the potential environmental harm.

Therefore, the Court ORDERS as follows:

(1) The Record of Decision dated March 22, 2004, entitled "To Remove or Modify the Survey and Manage Mitigation Measure Standards and Guidelines in Forest Service and Bureau of Land Management Planning Documents Within the Range of the Northern Spotted Owl" (the "2004 ROD") is hereby set aside, and Defendants shall not rely on it or implement it.

(2) The Record of Decision dated January 2001, entitled "Record of Decision and Standards and Guidelines for Amendments to the Survey and Manage, Protection Buffer, and other Mitigation Measure Standards and Guidelines" (the "2001 ROD") is hereby reinstated, including any amendments or modifications to the 2001 ROD that were in effect as of March 21, 2004.

(3) Defendants shall not authorize, allow, or permit to continue any logging or other ground-disturbing activities on projects to which the 2001 ROD applied unless such activities are in compliance with the 2001 ROD (as the 2001 ROD was amended or modified as of March 21, 2004).

(4) No project or activity enjoined under this Order may occur unless and until this Court modifies or vacates this Order.

The clerk is directed to provide copies of this order to all counsel of record.

Dated: January 9, 2006

                                      s/Marsha J. Pechman
                                      Marsha J. Pechman
                                      United States District Judge